IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| CCD MANAGEMENT, LTD., | ) | CASE NO. 11-71128 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| BANK OF BOTETOURT, | ) | |
| | ) | |
| Movant, | ) | Motion for Relief From |
| | ) | the Automatic Stay |
| v. | ) | |
| | ) | |
| CCD MANAGEMENT, LTD., | ) | |
| | ) | |
| Respondent | ) | |

**MEMORANDUM DECISION**

Bank of Botetourt (the "Bank") filed on June 14, 2011 a Motion for Relief from the Automatic Stay (the "Motion") as to four commercial properties owned by CCD Management (the "Debtor"). The Motion was originally noticed for a hearing on July 11, 2011 but was continued at the Debtor's request and with the Bank's consent to July 25, 2011 due to the sickness of the Debtor's owner and president. At the hearing upon the Motion held on the latter date, counsel for the Debtor advised the Court and the Bank that his client did not oppose relief being granted as to one of the four properties, specifically the property located on Orange Avenue in the City of Roanoke, Virginia, but did oppose relief being granted as to the three remaining properties identified as the First Street property in the City of Roanoke, the Williamson Road property also located in the City of Roanoke, and the Wirtz property located in Franklin County, Virginia. Accordingly, the Court immediately granted relief as to the Orange

Avenue property and directed counsel for the Bank to prepare an order to that effect. After consideration of the evidence and arguments offered at the hearing, the exhibits to the Motion, and the information reported by the Debtor in its bankruptcy schedules and Statement of Financial Affairs, the Court has decided to deny at this time the Motion as to the Debtor's remaining properties but to treat the July 25, 2011 hearing as a preliminary hearing and schedule a final hearing on August 22, 2011 on the conditions noted below.

## FINDINGS OF FACT

The parties stipulated for the purpose of the hearing that each of the properties in question is worth less than the amount of the secured debt owing to the Bank upon each such property. The Bank had obtained recent appraisals upon all four properties and the Debtor did not contest the values so reported of $160,000 for the First Street property, $185,000 for the Williamson Road property, and $270,000 for the Wirtz property. The unpaid real estate taxes upon the City of Roanoke properties have priority over the Bank's secured liens against such properties. According to the Bank's certifications, the amounts owing on the deed of trust liens, which are not disputed by the Debtor for the purpose of the hearing, are $187,426.09 for the First Street property, $207,534.17 for the Williamson Road property, and $367,772 for the Wirtz property. The latter property is also secured secondarily by the same deed of trust which secures the Orange Avenue property which is being surrendered to the Bank. In view of the stipulation that the balance due under the note that is only secured by the Wirtz property exceeds its $270,000 appraised value, this dual encumbrance seems to be immaterial to the analysis

undertaken here. The parties also agree that the only identified creditors[1] in the case are the Bank and the City of Roanoke, which is owed delinquent real estate taxes upon the properties located in that jurisdiction. The taxes on the Wirtz property in Franklin County appear to have been paid through 2010 and will not be due for 2011 until early December.

In its Motion the Bank asserts that it is entitled to relief from the stay upon two grounds. First, that the Debtor has no equity in any of the properties and that such properties are not necessary for an effective reorganization because

> the Debtor has no business to reorganize and has held title to the real estate mentioned in paragraph 2 herein for approximately ten months without (1) making the payments to the Bank; (2) paying the real estate taxes thereon; (3) keeping the property insured since March of 2011; (4) deriving any income from any of the property prior to filing in this Court and (5) there is no equity in any of the real estate owned by the Debtor.

The second ground for relief advanced is that "the filing of the Petition by the Debtor is part of a scheme to delay, hinder and defraud the Bank as it involved a transfer of all of the ownership of said real estate to the Debtor without the consent of the Bank." While evidence has been offered to prove that the filing of this bankruptcy case occurred just prior to the Bank's scheduled foreclosure sales of the properties, that the properties were conveyed without the Bank's consent to the Debtor in early August of 2010 without consideration by deeds executed by the Bank's loan obligor, and that the Debtor had received no income for the 2011 year to the date of filing on May 20, 2011, no evidence was offered as to the professed reason why such transfers were made or otherwise demonstrating that they were part of a scheme to hinder, delay or defraud

---

[1] The case docket, however, reflects that the law firm of Spillman Thomas & Battle, PLLC, has filed a Notice of Appearance and Request for Service of Papers on behalf of HomeTown Bank, which states that the latter is a party in interest.

either the Bank or other creditors.[2] While the circumstances are obviously suspicious, they do not, standing alone, demonstrate what motivated the conveyances. Accordingly, the Court will not consider further the second claimed ground for relief and will consider only the first ground advanced.

In its original Statement of Financial Affairs ("SOFA") filed with its petition, the Debtor provided no information at all concerning the nature of its business. On June 30, 2011 it filed an amended SOFA which described its business as "Property Management." Interestingly, it listed its business address as the Orange Avenue property, the same property which it agreed at the hearing to surrender to the Bank. The Debtor's principal, Mr. Bohon, testified that he wanted to move the Debtor's office to the Wirtz property and to lease it upon terms which would enable it to use a portion of such property for its own business needs. According to the testimony of Mr. Bohon at the hearing, he hopes to move the Debtor in the direction of managing commercial property for other owners. At present, however, it has no portfolio of properties under management other than its own.

The parties have stipulated that as of the time of filing none of the Debtor's properties was occupied by a tenant, but that as of the time of the hearing the First Street and Williamson Road properties are leased to third parties pursuant to written leases. Neither lease, however, was introduced into evidence. According to Mr. Bohon's testimony, he has rented the

---

[2] For example, because the Bank has perfected deed of trust liens upon all four of the properties, it does not appear that the conveyances would delay it from enforcing the deeds of trust. Whether other creditors might have been affected by the transfers is not disclosed by the evidence presented. The fact that such conveyances apparently violated a provision in the deeds of trust prohibiting transfer without the Bank's consent does not provide any evidence that they were motivated by a fraudulent or other improper motive.

Williamson Road property for a rental of $1,800 per month and the First Street property at an initial rental of $1,200 per month for two months, then $1,800 for two months, and then $1,500 thereafter. The latter lease is to be effective as of August 1, 2011. Mr. Bohon did not specify the duration of either lease or provide any other information about the lease terms. The initial rent for the Williamson Road property was received about "thirty days ago."[3] According, however, to the information contained in Debtor's Schedule G, which was filed with the petition and deals with executory contracts and unexpired leases, the lease on the Williamson Road property "commences 5/24/11" and the lease on the First Street property "commences 7/1/11." Without the leases themselves having been offered into evidence, the Court is unable to resolve the seeming discrepancies between the scheduled information and Mr. Bohon's testimony at the hearing. Mr. Bohon also testified that he has obtained security deposits in amounts equal to the monthly rental and has deposited them into an interest bearing escrow account. He further indicated that he had an appointment with a prospective tenant to view the Wirtz property at 5:00 p.m. on the date of the hearing and that he was asking $2,500 per month rent for this property.

        The monthly real estate tax accruals for the First Street, Williamson Road, and Wirtz properties are $182.17, $223.27 and $143.84,[4] respectively. The Motion alleges that the

---

[3] The date of the hearing in which this testimony was offered is July 25, 2011. Accordingly, the date thirty days prior to the hearing would have been June 25, 2011.

[4] The amount of the 2011 real estate tax upon the Wirtz property was never alleged or stipulated and no evidence of it was adduced at the hearing. The Court contacted the Franklin County Commissioner of Revenue following the hearing and was informed that the total real estate tax bill for 2011 is $1,726.08, which amount has been divided by twelve to derive the monthly accrual. While the Court would not ordinarily go outside the evidence or the stipulations of the parties, it believes that it is appropriate here to remedy an evident oversight by the parties as to a matter which ought not be the subject of any dispute between them.

5

Debtor's casualty insurance upon the improvements located on the properties lapsed earlier this year and that the Bank placed insurance upon them on March 25, 2011 at a monthly cost of $230 for the First Street property, $254 for the Williamson Road property, and $454 for the Wirtz property.  The Debtor does not seem to dispute that its insurance did lapse on the properties and that the Bank has placed insurance upon them but has not stipulated or admitted the specific amounts set forth by the Bank in the Motion.  It did not offer evidence at the hearing as to the cost involved if it secured appropriate insurance upon the properties, so the Court was left without actual evidence or stipulation on this point.

At the hearing upon the Motion counsel for the Debtor made the following offer of adequate protection[5] to the Bank with respect to the three properties which it seeks to retain for at least long enough to enable it to propose and seek confirmation of a plan of reorganization:

1.  Beginning August 28, 2011,[6] it would pay to the Bank each month a sum of money equal to the sum of the monthly real estate tax accrual for each of the three properties, the cost of

---

[5] In accordance with this Court's normal procedures with respect to motions for relief from the automatic stay, it entered on June 15, 2011 a pre-hearing order requiring the filing of certain documents and taking of certain actions with respect to such motions.  The Debtor failed to comply with that order in the following respects:  (1) it failed to file responsive certifications to the Bank's certifications of the amounts due, loan arrearages, property valuations and similar relevant facts, and (2) it did not file, as required by paragraph # 5 of such order, at least three (3) days prior to the hearing, "a statement as to how the Movant(s) can be adequately protected if the stay is to be continued by the Court."  Counsel for the Bank did not object to such failures, but compliance would have expedited the hearing and assisted the Court in its consideration of these matters.  The Court reserves of course the discretion to deal with such failures sua sponte. It will treat the failure to file responsive certifications as admissions of the accuracy of the Bank's certifications filed in accordance with its obligations under the pre-hearing order.

[6] It was evident at the hearing that as of that time the Debtor did not have the unrestricted cash to begin immediately paying adequate protection to the Bank in any significant amount, much less the amount promised to begin slightly more than a month hence.

6

insuring each property, and the monthly accrual of interest at the current applicable rates upon the principal amounts owing to the Bank upon the three notes which are secured by such properties.

    2. The Debtor would agree to file no later than August 15, 2011 its proposed Plan of Reorganization and Disclosure Statement.

    3. If it failed to fulfill these commitments, it would consent to termination of the automatic stay as to the remaining properties constituting the Bank's collateral.

Based on the stipulated principal amounts owing to the Bank upon the notes secured by the three properties, the current applicable interest rates,[7] the real estate tax obligations, and, in the absence of any stipulation or admission on the issue or offer of proof by the Debtor, the amounts alleged by the Bank in the Motion for casualty insurance expense, the Court has calculated the approximate monthly payment amount promised in this offer as follows:

|           | FIRST ST.  | WILLIAMSON RD. | WIRTZ      | TOTALS     |
|-----------|------------|----------------|------------|------------|
| Interest  | $923.70    | $1,021.12[8]   | $1,827.90  | $3,772.72  |
| Tax       | 182.17     | 223.27         | 143.84     | 549.28     |
| Insurance | 230.00     | 254.00         | 454.00     | 938.00     |
| Totals    | $1,335.87  | $1,498.39      | $2,425.74  | $5,260.00  |

---

    [7] The Court calculated the monthly interest on each loan by multiplying the per diem interest factor provided in the Bank's certification by thirty.

    [8] The per diem interest factor noted in the Bank's certification for this property, $102.11, appears to be erroneous when it is compared with those for the other properties. While the Court is treating the Debtor's failure to file responsive certifications as an admission of the accuracy of the information in the Bank's certification, it will not treat it as an admission of a figure that is clearly in error. In order to arrive at the proper interest payment, the Court, in accordance with the instructions for the calculation of interest provided in the note, divided the 6.25% annual interest rate by 360, multiplied the result by the unpaid principal listed in the Bank's certification, then multiplied this figure by 30.

7

At the hearing upon the Motion, the Debtor's principal, Mr. Bohon, proposed that he would start offering his real estate appraisal fee income, which he represented to be approximately $50,000 a year and which he has apparently previously received as a sole proprietor, to the Debtor to increase its chances for a successful reorganization. No such appraisal services had been rendered on behalf of the Debtor as of the time of the hearing however. He claimed that he would not need to use such income for the personal obligations for which it has previously been used because his wife, from whom he has been separated until just very recently, obtained a very well-paying job about two months ago.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Motions for relief from the automatic stay are explicitly defined as "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(G).

The Bank seeks relief under 11 U.S.C. § 362(d)(2), which provides that bankruptcy courts "shall grant relief from the stay . . . with respect to . . . an act against property . . . if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." To make out a *prima facie* case under that section, a movant must first show that the debtor lacks equity in the collateral. *Brown Bark I L.P. v. Ebersole (In re Ebersole)*, 440 B.R. 690, 699 (Bankr. W.D. Va. 2010); *CMF Loudon Ltd. P'ship v. Nattchase Assocs. Ltd. P'ship (In re Nattchase Ltd. P'ship)*, 178 B.R. 409, 416 (Bankr. E.D. Va. 1994); *see also In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) ("The secured creditor who seeks relief from the automatic stay under § 362(d)(2) must demonstrate

(1) the amount of its claim, (2) that its claim is secured by a valid, perfected lien in property of the estate, and (3) that the debtor lacks equity in the property."). If this initial burden is met, the burden of proof then shifts to the party opposing relief to prove that the property is necessary for an effective reorganization. *Ebersole*, 440 B.R. at 700. To make this showing, the party opposing relief must show that the property is "essential for a reorganization *that is in prospect*," which is to say that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)).

The parties have stipulated for the purpose of the hearing upon the Motion the Debtor's lack of equity in each of the properties. Accordingly, the burden of proof therefore shifts to the Debtor to establish that the properties are necessary for an effective reorganization. The term "effective reorganization" is broader than it might initially appear. Indeed, in a 2000 decision by Judge William Anderson of this Court it was held that "[a] liquidating Chapter 11 case can meet the effective reorganization requirement of § 362(d)(2) so long as it is not a single asset case." *City of Martinsville v. Tultex Corp. (In re Tultex Corp.)*, 250 B.R. 560, 569 (Bankr. W.D. Va. 2000). A 2002 decision by the Bankruptcy Court for the Southern District of New York held that where a debtor's principals agreed to make capital contributions to it for the purpose of underwriting its reorganization, the fact that such debtor was not currently earning income did not preclude a proper Chapter 11 filing with the goal of "restructuring its balance sheet to facilitate the rehabilitation of a derelict residential building." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 847 (Bankr. S.D.N.Y. 2002).

DECISION

This decision is a surprisingly close one. On the one hand, the Debtor's pre-filing business activities are unimpressive to say the least and Mr. Bohon's testimony at the hearing upon the Motion was not such as to inspire much confidence that he will do or accomplish what he proposes to do. More than once answers given during one part of his testimony seemed to contradict or significantly modify testimony which had been given only a few minutes before. On the other hand, it is not disputed that the Debtor has negotiated recently significant income-producing leases upon two of the three commercial properties which it seeks to retain. Furthermore, Mr. Bohon appears to believe that he has a very good prospect of also leasing promptly the third property (the Wirtz property) at a rental of $2,500 per month. The case was just filed on May 20, 2011 and the Debtor has committed to filing a plan of reorganization and disclosure statement by August 15, 2011, which would be within ninety days of the filing date and just slightly more than thirty days beyond the originally scheduled hearing date for the Motion. That would certainly seem to justify a conclusion that a plan is "in prospect." *See Ebersole*, 440 B.R. at 700. While it would be a stretch at this point to surmise that it is likely that the Debtor will be able to propose and obtain confirmation of a plan of reorganization, all that is required is for the Court to conclude that such a result is "a reasonable possibility . . . within a reasonable time." *Timbers of Inwood Forest*, 484 U.S. at 376. If in fact the Debtor is able to and does pay the adequate protection which it has offered, the Court concludes that such amount would be sufficient to protect the value of the Bank's secured position until a confirmation hearing can be held on the plan promised to be filed by August 15. The Bank likely will suffer a significant deficiency loss upon the liquidation of the Orange Avenue

property.  While at this point it believes that its best interest would be served by foreclosing now upon all four of the Debtor's properties, it is by no means just a negligible possibility that actual income being produced by these properties may persuade it that both itself and the Debtor would be better served by negotiating a reasonable restructuring of the debt on the three remaining properties which might allow a consensual plan to be confirmed.  To grant the Motion in full at this point would clearly end this case now.

The Court concludes that the equities at this very early point in this case fall on the side of allowing the Debtor an opportunity to pursue confirmation of a plan.  Accordingly, the Court will treat the hearing on July 25, 2011 as a preliminary hearing and will schedule a final hearing for August 22, 2011 at 2:00 p.m. in Roanoke, which will be one week after the date upon which its plan of reorganization and disclosure statement will be due.  The Court will require that at least $2,500 of the promised adequate protection payment must by made by means of a certified check or other form of guaranteed funds delivered to the Bank on or before August 15, 2011, with the balance to be due by the time of the final hearing.  By that date the Debtor will be able to update the Bank and the Court on its efforts to lease the Wirtz property.  Also by that date the Court will be in a much better position to assess whether the plan which has been filed has a reasonable chance of being confirmed within a reasonable time.  An order to such effect will be entered contemporaneously with the signing of this Memorandum Decision.

This 28th day of July, 2011.

William F. Stone, Jr.
UNITED STATES BANKRUPTCY JUDGE